**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

CURTIS B. WILLIS

    Plaintiff,

*v*.                                          Case No. 06-CV-13607

COMMISSIONER OF                 DISTRICT JUDGE THOMAS L. LUDINGTON
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. REPORT

#### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the

Commissioner's decision denying Plaintiff's claim for disability insurance benefits. This matter is currently before the Court on Defendant's Motion for Summary Judgment. (Dkt. 16.)[1]

Plaintiff was 47 years of age at the time of the administrative hearing. He has a high school education and brief periods thereafter of vocational education. (Tr. at 199, 200.) Plaintiff's relevant work history includes work as a carpenter, a brick mason, injection molding operator, and as a telemarketer. (Tr. at 125.)

Plaintiff filed the instant claim on April 23, 2004, alleging that he became unable to work on January 3, 2003 (Tr. at 67.) The claim was denied at the initial administrative stages. (Tr. at 21.) On November 10, 2005, Plaintiff appeared before Administrative Law Judge ("ALJ") Ethel Revels who considered the case *de novo*. (Tr. 192-228.) After determining the testimony of a Vocational Expert was necessary, the ALJ conducted a second hearing by telephone with the Plaintiff January 10, 2006. (Tr. at 229-247.) In a decision dated January 27, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 11-20.) Plaintiff requested a review of this decision on March 22, 2006. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner on June 9, 2006, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On August 11, 2006, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to

---

[1]Although the deadlines for briefing have been extended twice (Dkt. 12, 15), Plaintiff has failed to respond to Defendant's motion. I therefore conclude that the matter is ready for Report and Recommendation.

2

determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case *de novo* . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decision makers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for

substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.     Governing Law**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the

burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

**D.    Administrative Record**

Evidence contained in the administrative record and presented to the ALJ indicates that in late August 1999[2], Plaintiff underwent pulmonary function studies. The report notes that Plaintiff had a history of asthma, and that prior to the administration of medications, Plaintiff showed a severe pulmonary obstruction. (Tr. at 174.)

In late April 2004, Plaintiff was seen at the Henry Ford Hospital emergency department. Discharge instructions indicate that Plaintiff was found to be suffering from asthma. (Tr. at 175.) Plaintiff was advised to avoid becoming dehydrated and to take all prescribed medications. (Tr. at 176-177.) The discharge instructions also indicate that Plaintiff may have suffered from high blood pressure, although an exact reading was not listed. (*Id.*)

In late July 2004, Plaintiff underwent a psychiatric examination conducted at the request of the Disability Determination Service by Dr. S. Rastogi, M.D. (Ex. 2F.) Doctor Rastogi reported that Plaintiff felt depressed about his financial conditions and living situation. (Tr. at 129.) Plaintiff denied suicidal thoughts, symptoms of mood swings or hallucinations, along with any prior history of alcohol or substance abuse. (*Id.*) Plaintiff recounted that he lived in an abandoned house, that he had no hobbies and that he did not interact with his neighbors. (Tr. at 129.) The doctor stated that Plaintiff was cooperative, his eye contact was good, and there was no evidence of psychomotor retardation or agitation. (Tr. at 130.) The doctor reported that Plaintiff's stream of mental activity was slow, but was organized and coherent. (*Id.*) Doctor Rastogi found Plaintiff's affect to be appropriate and his demeanor friendly. (*Id.*) The doctor reported that when

---

[2] This date is partially obliterated.

asked about his future plans, Plaintiff stated that he wanted to become gainfully employed. (Tr. at 131.) The doctor diagnosed an unspecified depressive disorder and rated Plaintiff's prognosis as fair. (*Id.*)

The same day, Plaintiff underwent a physical examination, also conducted at the request of the Disability Determination Service, by Dr. P. Patel. (Ex. 6F.) Plaintiff recounted that he suffers from asthma and takes inhaler medications. (Tr. at 152.) Plaintiff stated that he had undergone surgery to his left knee in 1978. Plaintiff also recounted a history of intermittent back pain. (*Id.*) Doctor Patel reported that the range of motion in Plaintiff's cervical spine, elbows, hips, ankles, wrists and fingers was normal. (Tr. at 153, 156.) Range of motion in Plaintiff's lumbar spine was limited in extension to 15 degrees. (Tr. at 153, 155.) Plaintiff's right knee exhibited normal range of motion, and the left knee showed a 10 degree decrease in range of motion. (Tr. at 153, 156.) Doctor Patel reported that Plaintiff's cranial nerves were intact and strength in the upper extremities was normal. (Tr. at 154.) The strength of Plaintiff's right leg was normal, but somewhat diminished in the left. (*Id.*) X-rays taken the same day of Plaintiff's left knee showed it to be within normal limits, and there was no evidence of fracture or dislocation. (Tr. at 157.) X-rays of Plaintiff's lumbosacral spine revealed moderate narrowing. (*Id.*)

In late November 2005, Plaintiff was seen at the St. John Medical Center emergency room. (Ex. 13F.) Plaintiff's discharge summary states that no specific diagnosis was found, and suggests that Plaintiff obtain a refill of his medications. (Tr. at 178.)

During the first administrative hearing, Plaintiff testified that after he was initially denied benefits, he briefly worked for a temporary employment agency, walking 6 miles to work, because he did not have a driver's license. (Tr. at 208.) Plaintiff testified that although he became tired quickly, he felt that he could lift up to 50 pounds "on a consistent basis" for brief periods, and lift

10 to 20 pounds for longer periods. (Tr. at 210-211.) Plaintiff testified that he could sit for a half an hour or more at a time with adjusting his position and could stand 40 to 45 minutes. (Tr. at 217.)

A vocational expert ("VE") testified at the second administrative hearing. After listening to a detailed summary of Plaintiff's prior testimony (Tr. at 234-36), he characterized Plaintiff's prior work as primarily unskilled and medium to heavy in exertion. (Tr. at 241.) In response to a hypothetical question from the ALJ listing conditions consistent with the Plaintiff's testimony recounted above, the VE identified approximately 7,000 assembly, 4,000 packaging, and 2,500 unskilled jobs that could be done either sitting or standing. (Tr. at 243.) The VE also identified approximately 15,000 assembly, 11,000 packaging, and 8,500 light-exertion jobs consistent with the ALJ's hypothetical question. (Tr. at 248-49.)

### E. ALJ's Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 19.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work. (*Id.*) At step five, the ALJ, using the Medical-Vocational Rules as a guide, denied benefits, concluding that Plaintiff retained the ability to undertake a significant range of light-exertion work. (Tr. at 20).

### F.     Review of ALJ's Determination

#### 1.     Legal Standards

The ALJ found that Plaintiff possessed the residual functional capacity to return to a wide range of light-exertion work. (Tr. at 19-20.) Light work is defined by the Commissioner, for grid purposes, as follows:

> Light Work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2.     Substantial Evidence

In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, as to Plaintiff's allegations of disabling physical impairments, although there is evidence to the contrary in the form of the 1999 pulmonary function studies (Tr. at 17), I suggest that substantial evidence supports the ALJ's findings.  The medical evidence of record, including

the objective medical results of Dr. Patel's physical examination, the x-rays of Plaintiff's knee and back, and the recommendations contained in hospital discharge instructions are all consistent with Plaintiff's hearing testimony, which is in turn consistent with the ALJ's findings and the Commissioner's definition of light work. In the event that the record is found not to support the ALJ's finding relating to light work, I further suggest that abundant evidence supports a finding that Plaintiff could undertake sedentary work.

The ALJ failed to find Plaintiff's complaints of disabling limitations fully credible. In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause limitations; however, he found that the severe and debilitating nature of Plaintiff's alleged limitations were not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

As to plaintiff's claims of disabling mental impairments, I suggest that the evidence in this case falls considerably short of that deemed sufficient in this circuit to justify a finding of disability. In *Cornette v. Comm'r of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988), the ALJ found that plaintiff's condition met both the A and B criteria of Listed Impairment 12.04. At

issue was the date of disability. In that case, there was testimony that plaintiff's wife had to assist him in bathing and putting on his clothes. The plaintiff twice tried to commit suicide, and plaintiff did nothing but lie in bed and watch television. *Id*. at 264.

In *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991), the court reversed a finding of nondisability and held that plaintiff there met both the A and B criteria of Listed Mental Impairment 12.08. In *Lankford*, there was abundant evidence of repeated suicide attempts, violent behavior and repeated lengthy hospitalizations for treatment of mental disorders.

The facts of these cases stand in considerable contrast to those of the instant case. Neither Plaintiff's testimony, the findings of Dr. Rastogi, nor Plaintiff's description of his activities (Tr. at 81-87), indicate that mental impairments have rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker v. Comm'r of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992).

Accordingly, I suggest that the record contains substantial evidence supporting the ALJ's decision and, therefore, after review of the record, I conclude that the ALJ's decision, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                      s/ *Charles E Binder*
                                                      CHARLES E. BINDER
Dated: September 20, 2007                     United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James A. Brunson and on Mikel E. Lupisella, and on District Judge Thomas L. Ludington in the traditional manner.

Date: September 20, 2007                 By     s/Patricia T. Morris
                                                          Law Clerk to Magistrate Judge Binder